UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT WINDES | CIVIL ACTION |
| VERSUS | NUMBER: 16-4871 |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | SECTION: "R"(5) |

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based upon disability. (Rec. docs. 13, 14).

Robert Windes, Plaintiff herein, filed the subject applications for DIB and SSI benefits on March 7, 2013, with a protective filing date of March 6, 2013, alleging disability as of June 1, 2012. (Tr. pp. 278-281, 282-388, 302). In a "Disability Report-Adult" form that appears in the administrative record below, the conditions limiting Plaintiff's ability to work were identified as a head injury, a stroke, depression, seizures, memory loss, Factor V Leiden Deficiency (a blood clotting condition), pulmonary embolism, high cholesterol, difficulty processing information, and prostate cancer (in remission). (Tr. pp. 305-317). Plaintiff's applications for Social Security benefits were denied at the initial level of the Commissioner's administrative-review process on June 6, 2013. (Tr. pp. 135-143). Plaintiff then requested reconsideration of the Commissioner's initial determination, which request was denied on August 14, 2013. (Tr. pp. 144-145, 146-150, 151-157). Pursuant to Plaintiff's request, a

hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on September 24, 2014 at which Plaintiff, who was represented by counsel; Plaintiff's daughter; and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 158-160, 27-76). On December 24, 2014, the ALJ issued a written decision in which he concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 8-26). The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision on March 8, 2016, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-6). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In his cross-motion for summary judgment, Plaintiff frames the sole issue for judicial review as follows:

> I.   The Commissioner's Finding Is Not Supported by Substantial Evidence as the ALJ Failed to Find Plaintiff had Any Exertional Limitations Despite Finding Plaintiff's Deep Vein Thrombosis Severe.
>
> (Rec. doc. 13-2, p. 6).

Relevant to the issue to be decided by the Court are the following findings that were made by the ALJ:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since June 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: deep vein thrombosis, organic brain syndrome, affective disorder, and alcohol dependence (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: avoid all hazards; limited to understanding, remembering and carrying out simple, routine, repetitive tasks; occasional interaction with others, and no production rate or pace work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 13, 1954 and was 58 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. pp. 13, 14, 15, 18, 19).

Judicial review of the Commissioner's decision to deny DIB or SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and

must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1970). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which…has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. *Harrell*, 862 F.2d at 475. In making this determination, the Commissioner uses the five-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. An individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors;

4. If an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made; and,

5. If an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987). If the analysis reaches the fifth step, the ALJ may establish that other work is available that the claimant can perform by relying on expert vocational testimony or other similar evidence to establish that such jobs exist. *Fraga*, 810 F.2d at 1304 (citing *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985)). Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Fraga*, 810 F.2d at 1302.

As noted earlier, Plaintiff challenges the Commissioner's decision on a single ground, namely, that the ALJ, despite finding that his deep vein thrombosis ("DVT") was a severe impairment at step two of the §§404.1520/416.920 analysis, failed to include any limitations resulting from that condition in his assessment of Plaintiff's residual functional capacity ("RFC") to work. Before turning to the specific facts of this case, the Court will recall the governing legal principles applicable to Plaintiff's challenge.

The burden of proof that a claimant bears in establishing that he suffers from a severe impairment at step two of the §§404.1520/416.920 analysis is a relatively minimal one: an impairment can be considered as not severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of his age, education, and work experience. *Anthony*, 954 F.2d at 293; *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984). "As a result, where a claimant suffers from an impairment which is more than a 'slight abnormality,' the Fifth Circuit has disapproved of the summary dismissal of [Social Security] benefits applications at the second step without consideration of the remaining steps in the sequential analysis." *Irons v. Astrue*, No. 07-CV-9337, 2009 WL 500627 at *10 (E.D. La. Feb. 23, 2009)(citing *Anthony*, 954 F.2d at 293-94 and *Stone*, 752 F.2d at 1102-04).

Social Security Regulations also provide that, if the fourth step of the §§404.1520/416.920 analysis is reached, the ALJ is required to determine a claimant's RFC, a term of art which is defined as what the claimant can still do despite his limitations. 20 C.F.R. §§404.1520(e), 404.1545, 416.920(e), 416.945. Once that assessment is made, the ALJ is to then compare the demands of the claimant's past work with his present capabilities to determine if prior jobs can be performed. 20 C.F.R. §§404.1520(e), 416.920(e); *Villa*, 895 F.2d at 1022; *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988). If the fifth step in the five-step sequential analysis is reached, the ALJ must consider the claimant's RFC, along with his age, education, and past work experience, to determine if there is any other work that the claimant is capable of performing. 20 C.F.R. §§404.1520(f), 416.920(f). Just like the ultimate

decision of whether or not a claimant is disabled, the responsibility for determining a claimant's RFC lies with the ALJ at the hearing level. 20 C.F.R. §§404.1546, 416.946.

Reconciling an ALJ's step-two severity findings and his subsequent RFC assessment is a topic that has been the subject of some discussion. Although authority to the contrary does exist, *Walker v. Colvin*, No. 14-CV-1498, 2015 WL 5836263 at *14-16 (N.D. Tex. Sept. 30, 2015), the prevailing, more widely-accepted view is that an ALJ does not err solely because he finds an impairment to be "severe" at step two but does not attribute any limitations to that impairment in assessing a claimant's RFC. *See*, *e.g.*, *Griffeth v. Commissioner of Social Security*, 217 Fed.Appx. 425, 427-28 (6th Cir. 2007); *Lacroix v. Barnhart*, 465 F.3d 881, 888 n. 3 (8th Cir. 2006); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The reasoning behind these decisions is that the mere existence or diagnosis of a condition does not compel the conclusion that a claimant is disabled; rather, the proper inquiry is whether that condition results in functional limitations that preclude a claimant from performing his past work or any other work. *See Bordelon v. Astrue*, 281 Fed.Appx. 418, 422 (5th Cir. 2008)(distinguishing between diagnosed impairments and functional limitations caused by those impairments). With the foregoing standards in mind, the Court turns to the evidence pertaining to Plaintiff's DVT that was developed in the administrative proceedings below, as well as the ALJ's consideration of that evidence.

On February 28, 2013, Plaintiff presented to the Harborview Medical Center Emergency Department ("ED") in Seattle, Washington, with complaints of three to four days of left calf pain and one day of calf swelling, relating an air travel-related incident of DVT some 25 years earlier. The pain was described as "dull" and Plaintiff reported no redness or warmth, chest pain, shortness of breath, or palpitations. Upon physical examination,

7

Plaintiff's left lower extremity was swollen when compared with the right and was warm to the touch with no erythema, trace pitting edema, a negative Homan's sign, 1+ posterior tibial pulse, superficial venous engorgement, and no palpable cord. A duplex ultrasound was performed which revealed DVT (non-occlusive) in the left common femoral and gastrocnemius veins; DVT (occlusive) in the left profunda femoris, femoral , popliteal, and peroneal veins; and, superficial thrombophlebitis (occlusive) in the left small saphenous vein. Plaintiff was treated with Fragmin therapy in the ED. The diagnosis was left leg DVT and Plaintiff was discharged home with a prescription for Coumadin and was to follow-up with the Anticoagulation Service Clinic. (Tr. pp. 401-427, 481-486, 595-599).

Plaintiff was next seen at the Harborview Aftercare Clinic on March 4, 2013 for monitoring of his blood-thinning medication. He advised the attending medical personnel that he had been doing a lot of work in the form of lifting/moving but had otherwise not been involved in trauma or recent travel. Plaintiff was compliant with his Coumadin and Dalteparin and reported no problems with bleeding or bruising and no chest pain, shortness of breath, or a cough. Plaintiff had mild 1+ edema of the left lower extremity but no skin breakdown or redness. The dosage of Coumadin was adjusted and further monitoring was scheduled. (Tr. pp. 600-602). That medication adjustment was effective and by March 8, 2013, Plaintiff's INR level had increased to an acceptable level with no complaints other than throbbing left lower extremity pain but no chest pain, change in edema, melelna, hematochezia, headaches, numbness, or tingling. There was 1+ edema in the left ankle, pretibial, but no skin breakdown. Plaintiff's medications were adjusted further and arrangements for long-term follow-up care with a primary-care physician were being explored. (Tr. pp. 603-610).

The next DVT-related medical records that appear in the proceedings below document Plaintiff's return to the Aftercare Clinic on March 22, 2013. In those records, reference was made to a previous clinic visit on March 15, 2013, as a result of which the dosage of Plaintiff's Coumadin had been decreased, based on an INR level of 4.2. Plaintiff reported that his left leg pain was improving and he had no other symptoms. There was 1-2+ edema in the left lower extremity but none on the right. Plaintiff's medications were adjusted further, including the addition of hypertension medication, and he was counseled on alcohol intake and diet. (Tr. pp. 479-480). On March 29, 2013, Dr. Gary Schuster substituted Rivaroxaban for Coumadin and was to start Plaintiff on Lisinopril for hypertension. (Tr. pp. 474, 477-478). Plaintiff returned to Dr. Schuster on April 15, 2013 with the presenting problems being identified as alcoholism, excessive smoking, status-post DVT, hyperlipidemia, hypertension, and transient ischemic attack versus atypical seizure disorder. He had resumed taking Crestor for his hyperlipidemia by that time. Plaintiff's DVT was said to be adequately treated with Xarelto and was to be re-checked in two months. (Tr. pp. 465-476).

On May 16, 2013, Plaintiff underwent a consultative psychological evaluation by Dr. Peter Moore. Pertinent to the resolution of the challenge that Plaintiff raises herein, he advised Dr. Moore that he was unable to work because of memory and concentration problems secondary to a head injury he had sustained in 2002. In terms of functionality, Plaintiff advised the doctor that he could tend to his personal needs, prepare meals, and perform all household chores without difficulty. He could also shop, drive, and manage his finances and he spent his time looking for work on his computer or doing housework.

9

Plaintiff was observed to be in no physical discomfort during the course of the evaluation. (Tr. pp. 487-490).

On May 19, 2013, Plaintiff underwent a consultative physical evaluation by Dr. Melinda Loveless in Seattle. Plaintiff drove himself to the evaluation and needed no assistive device. Chief complaints at that time were identified as a head injury with memory loss and difficulty processing information; a stroke/TIA; depression/anxiety; seizures; pulmonary embolism/Factor V Leiden; and, high cholesterol. Among the records that had been provided to Dr. Loveless in advance of the evaluation were those from Plaintiff's episode of DVT on February 28, 2013. In discussing Plaintiff's medical issues, the doctor remarked that he "… apparently still has a little bit of discomfort in the left leg, but otherwise no difficulties from the clotting disorder." Plaintiff was said to be fully independent in the activities of daily living. Upon physical examination, Plaintiff had a normal, reciprocal, non-antalgic gait; was able to heel-to-toe walk and tandem gait without difficulty; and, was not off-balance on Romberg testing. Straight leg raising was negative bilaterally, Plaintiff had 5/5 strength throughout, and active range of motion was present in all joints. In discussing her diagnosis, Dr. Loveless remarked that aside from Plaintiff's earlier traumatic brain injury, all of his other physical conditions were "… medical issues which are currently managed or treated or were single events in the past. He reports that none of these have an influence in his ability to work at this point in time." The doctor also offered a functional assessment of Plaintiff's capabilities in which she found that he had no exertional, postural, manipulative, or environmental limitations. (Tr. pp. 493-497).

The next DVT-related records were not generated until October 10, 2013 when Plaintiff presented the Singing River Hospital ED in Pascagoula, Mississippi, with complaints

of left lower extremity pain and swelling for the previous three days unaccompanied by chest pain or shortness of breath. Plaintiff had not taken his anti-coagulation medication for three months owing to financial issues. Nevertheless, he still smoked one-half pack of cigarettes per day. Physical examination revealed good muscle tone and movement in all extremities but there was 2+ edema in the left lower extremity with tenderness to palpation. A deep vein ultrasound was performed which revealed occlusive DVT within the left femoral vein that had become partially occlusive within the left popliteal and peroneal veins. Plaintiff was treated with and was provided a 10-day supply of Xarelto and he was encouraged to pursue the drug manufacturer's patient-assistance program. The discharge diagnosis was DVT and Plaintiff was to follow-up with his primary care physician. The ED discharge instructions advised Plaintiff to exercise his legs regularly, to take a brisk 30-minute walk every day, and to avoid lying in bed for long periods of time without moving his legs. (Tr. pp. 611-626).

On November 14, 2013, Plaintiff presented to the Coastal Family Health Center ("CFHC") in D'iberville, Mississippi, for the purpose of establishing a treatment relationship with a new physician. Plaintiff complained of no leg pain or leg/ankle swelling. A steady gait was demonstrated on physical examination and the left lower extremity was normal on inspection and palpation with a normal range of motion and normal tone, bulk, and strength. Plaintiff was said to be capable of daily activities. He was prescribed Xarelto and was to return in one month. (Tr. pp. 627-628). Plaintiff was seen again at CFHC on February 24, 2014 for a routine general medical examination and medical staff assisted him in completing an application for prescription assistance for Xarelto. (Tr. pp. 629-637).

The final medical records document Plaintiff's return visit to CFCH on July 14, 2014. He continued to smoke and was not taking his blood pressure or statin medications. Plaintiff

was thus counseled on the need to follow his medication regimen in light of his past medical history. Prescription refills were given for Lisinopril, Lovastatin, and Xarelto. (Tr. pp. 638-639).

Relevant to the matter at hand, at the administrative hearing that was held on September 24, 2014, Plaintiff testified that moving his legs helped with circulation difficulties but that said activity was no substitute for elevating his foot above the level of his heart. In answer to the ALJ's inquiry, Plaintiff's attorney acknowledged that there was no doctor-imposed requirement in the record that Plaintiff elevate his leg as he testified to. Upon further questioning by the ALJ, Plaintiff testified that activity improved the circulation in his leg and thus made him feel better but that it was no substitute for elevating the extremity above his heart which he did every 1 to 1.5 hours for 10 to 15 minutes to alleviate "very significant discomfort." (Tr. pp. 38-40). Notably, when queried by the ALJ about his alcohol intake, Plaintiff testified that he had stopped drinking and that he had "... substituted other ways of accomplishing that such as working out at a gym, and running on a treadmill, and doing some other physical type of ways that made [him] relax" (Tr. pp. 40-41).

In response to counsel's further questions, Plaintiff testified that he experienced discomfort after standing or sitting for 20 minutes. Walking was helpful but nothing substituted for elevating his leg above his heart level. (Tr. pp. 52-53). When directed by the ALJ to the most recent medical records in which it was reported that Plaintiff had no left leg problems as long as he took his medication and that there was no leg-elevation requirement, Plaintiff testified that while his prescribed medication reduced the possibility of another DVT occurrence, circulation problems persisted when his foot was not elevated above his heart. (Tr. pp. 53-54).

On December 24, 2014, the ALJ issued his written decision denying Plaintiff's applications for Social Security benefits, finding, *inter alia*, that Plaintiff suffered from severe impairments that included DVT but assessing him as having the RFC to perform a full range of work at all exertional levels with various non-exertional limitations. In arriving at that RFC assessment, the ALJ first summarized the administrative hearing testimony respecting Plaintiff's DVT as follows:

> He also has problems with his left leg; he must elevate the leg above his heart for 10-15 minutes. He does not have good circulation in his leg. The claimant's daughter, Ms. Dorothy Bray stated that the claimant could not stand or sit for long periods. He can walk but he must take breaks. He must elevate his feet for 10-15 minutes after shopping in the grocery store.
>
> (Tr. p. 16).

In terms of the objective evidence pertaining to Plaintiff's DVT, the ALJ summarized and passed upon that evidence in the following fashion:

> On February 28, 2013, the claimant presented to the emergency room with complaints of left lower extremity swelling and pain for three days. A left lower extremity duplex ultrasound revealed deep vein thrombosis (non-occlusive) in the left common femoral and gastrocnemius veins, left profunda, femoris, femoral, popliteal and peroneal veins. He was started o[n] Fragmin and Warfarin (Exh. 3F/11-12, 23).
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> While the undersigned finds the claimant's organic brain syndrome, affective disorder, deep vein thrombosis, and alcohol dependence are severe medically determinable impairments, there is nothing to warrant restrictions beyond the nonexertional limitations found in the residual functional capacity determination. His impairments considered singularly or in combination do not restrict the claimant from performing normal daily activities or from completing normal routine tasks. The claimant does not receive regular or ongoing treatment for his medical problems.

\* \* \* \* \* \* \* \*

> The claimant's deep vein thrombosis has not been particularly bothersome as well. He presented to the emergency room on October 10, 2013 with complaints of left lower extremity pain and swelling for three days, but he had not been on anticoagulation for three months. He had no complaints of chest pain or shortness of breath. Examination showed good muscle tone and he could move all his extremities. He had 2+ edema and he was tender to palpation. He also had normal motor and sensory function and no focal deficits noted (Exh. 21F/3). When the claimant followed up in the clinic on November 14, 2013, his physical exam was within normal limits. His breathing was effortless and normal. His heart rate was regular and rhythm was regular. His gait was described as steady. Inspection of his lower extremities was normal. Palpation and range of motion on each side were normal. There was no joint instability and motor exam showed normal tone, bulk and strength. Subsequent visits on February 24, 2014 and July 14, 2014 revealed no abnormalities on physical examinations (Exh. 22F). The record does not support the claimant's and his daughter's claim that he must elevate his leg above his heart. The internal medicine consultative examining physician found no functional limitations with standing/walking, sitting, lifting/carrying, postural activities, or manipulative activities. There are no assistive devices used or indicated (Exh. 14F).

(Tr. pp. 17-18).

For the reasons that follow, the Court believes that the ALJ properly reconciled his step-two severity findings with his subsequent RFC assessment. First, although Plaintiff identified Factor V Leiden Deficiency and pulmonary embolism as disabling conditions in his applications for Social Security benefits and related paperwork, nowhere did he specifically identify DVT, with its potentially resulting effect on ambulation, as a similarly disabling condition. *Guerin v. Shalala*, 29 F.3d 623 (5th Cir. 1994)(citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989)). Second, as the ALJ noted, Plaintiff received only minimal treatment for DVT in the relevant time period,[1]/ *Villa*, 895 F.2d at 1024, and no medical examiner ever

---

[1]/ Given the absence of any objective, adverse medical findings preceding and following Plaintiff's two exacerbations of DVT which were 8 months apart, that condition arguably failed to satisfy the Regulations' duration requirement. 20 C.F.R. §§404.1509, 416.909.

14

placed any restrictions on his activities as a result of DVT, a proper consideration in a Social Security proceeding. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995); *McKinney v. Colvin*, No. 13-CV-900, 2014 WL 652948 at *6-7 (S.D. Miss. Feb. 19, 2014)(despite finding them to be "severe" impairments, ALJ did not err in not assessing functional limitations due to headaches, obesity, or hypertension). Indeed, the ED discharge instructions[2/] that Plaintiff received on October 10, 2013 actually advised him to exercise his legs regularly and not to remain sedentary for prolonged periods of time without moving his legs and at the administrative hearing he admitted to using a treadmill at the gym and engaging in other physical activities. Nowhere in the records of any of the physicians who had treated or examined Plaintiff was there a directive to or a report from Plaintiff regarding any leg elevation requirement. *Hollis*, 837 F.2d at 1384-85. Most importantly, aside from the two DVT exacerbations that Plaintiff experienced in February and October of 2013, physical examination findings of May 19 and November 14, 2013 and February 24 and July 14, 2014 were unremarkable with no exertional limitations noted. On the record that was before him, the ALJ did not err in omitting any DVT-related limitations from his RFC assessment. *Davis v. Commissioner of Soc. Sec.*, No. 12-CV-0036, 2013 WL 6182235 at *7 (M.D. Fla. Nov. 25, 2013).

When presented with much of the same documentary evidence that was later considered by the ALJ, the state-agency medical consultants, highly qualified physicians with expertise in Social Security proceedings whose opinions must thus be considered by the ALJ, 20 C.F.R. §§404.1527(e)(2)(i) and 416.927(e)(2)(i), concluded that Plaintiff's physical

---

[2/] While Plaintiff asserts in his cross-motion for summary judgment that this was one of two occasions on which he was "hospitalized" for DVT (rec. doc. 13-2, p. 8), the Court does not equate medical treatment provided in an ED setting with an actual inpatient hospital admission.

15

impairments were not even "severe." (Tr. pp. 85, 98, 112, 125). Giving Plaintiff the benefit of the doubt in recognition of the minimal burden imposed on a claimant at step two of the §§404.1520/416.920 analysis, the ALJ found that Plaintiff's DVT was a severe impairment. As discussed earlier, whether a claimant suffers from an impairment that is characterized as "severe" and whether that impairment results in functional limitations that preclude a claimant from performing his past relevant work or any other work are separate inquiries. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4); *Bordelon*, 281 Fed.Appx. at 422; *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). Finally, despite being duly tendered to Plaintiff's counsel at the administrative hearing, no inquiries were made of the VE regarding any exertional work-related restrictions resulting from Plaintiff's DVT. (Tr. pp. 74-76). Plaintiff should not now be heard to complain of the existence or extent of any DVT-related limitations when they were not deemed important enough to merit adversarial development in the administrative proceedings below. *See*, *e.g.*, *Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002); *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that Plaintiff's suit be dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[3]

New Orleans, Louisiana, this  27th  day of _____July_____, 2017.

                                          MICHAEL B. NORTH
                                UNITED STATES MAGISTRATE JUDGE

---

[3] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.